Leslie **VAN GORHAM**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–15256.

Court of Criminal Appeals of Oklahoma.

Sept. 16, 1970.

Harris, Graham & Harris, Bartlesville, Okl., for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh Collum, Asst. Atty. Gen., for defendant in error.

NIX, Judge:

Leslie Van Gorham, who shall hereinafter be referred to as the defendant, was charged by information in the District Court of Washington County with the crime of Burglary Second Degree, After Former Conviction of a Felony; was tried before a jury who found him guilty and assessed his punishment at ten years in the penitentiary. It is from that judgment and sentence that he lodges his appeal to this Court alleging numerous assignments of error.

The facts out of which this case arose are related in substance, as follows: Keith Newby was the owner of a vacant farm house in Washington County, Oklahoma. He testified that he usually keeps it closed up and that he keeps property inside the house, such as grain and small personal items. That he left the doors shut the last time he was there prior to the alleged crime. He admitted he could not be positive if the doors were closed, and that nothing was missing from within the house. Cecil Mills testified that on May 1, 1968, he saw defendant in a car on a road near the Newby house, that the car stopped near the Newby house, that someone came out of the Newby house, loaded something in the car, and then drove away. The co-defendant, David Myers, testified that he went with defendant to the Newby home farm, that defendant went to the house and then returned and told Myers to go get the wire, which he did. He testified he entered the

house by pushing on a door that was already ajar, entered, went upstairs, opened about ½ to 1 foot, a window, stepped out on the roof and cut some copper wire loose from the house which led to a pole. When the wire was cut loose from the pole, they proceeded to roll it up, (300 ft.) took it to Caney, Kansas and sold it for three or four dollars.

Defendant testified that he had nothing to do with the alleged crime. That he had loaned his car to David Myers. That he was playing pool when David returned and stated he had some copper wire to sell. That he orally confessed to the sheriff because he was trying to protect Sharon Thornton and David Myers because he thought they committed the alleged crime.

 This was a two-stage proceeding in which the jury found defendant guilty of Burglary Second Degree, which is described by statute, Title 21, Okl.St.Ann., § 1435:

"Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, auto, truck, trailer, vessel or other structure or erection in which any property is kept, with intent to steal therein or to commit any felony, is guilty of burglary in the second degree."

A close examination of the record fails to show an intent to steal or commit a felony inside the building as is required to prove burglary second degree.

The owner of the premises testified as follows:

"A. Well, when I went to the house why the wiring had been cut and taken that goes from the house to the meter pole, the electric wire, copper wire."

On cross-examination, the following was revealed:

"Q. Was there anything missing from the inside of the house?

A. No, nothing that I could locate, No."

David Myers, an admitted accomplice, testified as follows:

"Q. You opened a window rather, Pardon me. Went out onto the top of the building. Now, how far did you have to reach for these wires, David?

A. Oh, Quite a ways.

Q. All right, when you got through cutting the wire, did you come back through the building?

A. Yes.

Q. All right. And went out to the back and cut the other end, is that right?

A. Yes. * * *

Q. What did he tell you he was going to do when he went up there the first time, if anything?

A. He said he was going to get some wire. * * *

Q. When you went into that house, David, did you intend to take anything from the house?

A. Just the copper.

Q. I mean from inside the house?

A. No."

RE-DIRECT EXAMINATION:

"Q. It is your testimony you went there for what purpose?

A. To get some copper wire."

RE-CROSS EXAMINATION:

"Q. You testified here today that you went into that house with no intention to steal anything inside?

A. Inside, yes,

Q. Right, and you entered a plea of guilty to that crime?

A. Well, I actually stole the copper wire, so I —."

Deputy Sheriff Glenn Codding, on direct examination, stated:

"Q. And what then did the defendant tell you?

A. He proceeded to tell us that he and David Meyers had went to the farm house of Mr. Newby and had taken the wire. And he didn't go through any spe-

cific details that I remember. But that they did take the copper wire; * * *.

Q. What was said, if anything, about this house?

A. He told us how they went in the house; that the door was not locked; that they went in. And he didn't specifically state that I remember which one of them went in first, or otherwise, but they did go upstairs and open the window and go out on the roof. And they cut the wire loose from the top of the roof."

And, Sheriff J. L. Holt, on direct examination:

"A. He told us that he and another boy by the name of Meyers did get the wire at the Newby place * * *.

Q. Do you recall any other circumstances he told you about this incident?

A. None other than they got the wire and did take it to Caney and sell it."

After this, the state rested. It is obvious that evidence of intent to steal *therein* is completely lacking and is neither sufficient or ample to establish that element of burglary.

The state, in their case, chose to rely on burglary as a result of breaking and entering with an intent to steal *therein,* which they did not prove. They did not allege a breaking with intent to commit a felony.

In fact and truth, all the evidence relative to breaking and entering was to the effect that the door to the house entered was already ajar from one-half foot to one foot and entering was effected by merely pushing it further open and the purpose was to go upstairs where a window would lead them to the outside on top of a porch where they cut copper wire from the exterior of the house. There was nothing taken from within the house and all the testimony reflects that they entered the house with the sole intent of detaching the copper wire and for that purpose alone. Therefore, the evidence is wholly insufficient to sustain the crime of burglary second degree.

However, there were instructions of lessor offenses, any one of which the evidence would have justified. The most logical crime for which defendant could have been charged was "larceny of copperwire", as related in the trial judge's instruction number seven. A verdict of larceny or petit larceny or entering a building as set forth in 21, O.S.A., § 1438, which constitutes a misdemeanor.

Defendant also contends that improper and prejudicial testimony was admitted over objections of his counsel that prohibited him from having a fair and impartial trial. This contention arose out of the testimony of the sheriff, who was cross-examined as to an alleged confession:

"Q. This is the gist of his testimony, of his statement to you?

A. He told me he was on parole from Kansas."

No doubt, the experienced police officer knew this was improper. It is what is known as an "evidentiary harpoon".

Mr. Ambler, attorney for the state, questioned the defendant's father as follows:

"Q. At that time was he (def) on parole from Kansas?"

Defense counsel objected to this, and was sustained. Thereafter, he asked defendant's mother who was on the stand:

"Q. All right, has he ever given you any trouble in the past?

A. He has been in some trouble in the past, yes sir.

Q. What kind of trouble?

A. It was some trouble in Kansas.

Q. Well, in Kansas. Alright, what kind of trouble?

A. It was stealing some household goods out of a house.

Q. Was he convicted of that crime?

A. Yes, sir, he was.

Q. Was he sentenced by the court?

A. Yes, sir.

Q. Do you know what that sentence was?

A. One to ten years, I believe, and suspended."

This testimony was elicited from the witness before defendant took the stand and was clearly inadmissible and could serve no purpose at that time, but to prejudice the defendant to admit the testimony of a prior conviction before defendant takes the stand in a two stage proceeding was error of the worst kind, see Harris v. State, Okl. Cr., 369 P.2d 187 (1962).

One of the most conspicuous errors prominently revealed by the record is the instruction given as to the question of credit given a prisoner for good time and etc., as related a statute found in 57 O.S. Supp., 1969, § 138.

This Court said in a recent decision, Williams v. State, Okl.Cr., 461 P.2d 997, that the statute is unconstitutional, being in conflict with Article 4, § 1 of the State Constitution.

As a result of the errors related herein, this Court is of the opinion that defendant could not have had a fair and impartial trial as is guaranteed him under the Constitution and justice would be better served by a re-trial of said cause.

This case is therefore Reversed and Remanded for a new trial.

BUSSEY, J., and BRETT, P. J., concur.